**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RITE AID CORPORATION, et al.,<br><br>Debtors. | Case No. 23-18933 (MBK)<br><br>Chapter 11 |
| THOMAS A. PITTA, SOLELY IN HIS CAPACITY AS TRUSTEE OF THE RAD SUB-TRUST A,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE BODAKEN, et al.,<br><br>Defendants. | Adv. Pro. No. 25-1386 (JNP)<br><br>Judge: Jerrold N. Poslusny, Jr. |
| THOMAS A. PITTA, SOLELY IN HIS CAPACITY AS TRUSTEE OF THE RAD SUB-TRUST A,<br><br>Plaintiff,<br><br>v.<br><br>MCKINSEY & COMPANY, INC., et al.,<br><br>Defendants. | Adv. Pro. No. 25-1387 (JNP)<br><br>Judge: Jerrold N. Poslusny, Jr. |
| THOMAS A. PITTA, SOLELY IN HIS CAPACITY AS TRUSTEE OF THE RAD SUB-TRUST A,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH B. ANDERSON JR., et al.,<br><br>Defendants. | Adv. Pro. No. 25-1388 (JNP)<br><br>Judge: Jerrold N. Poslusny, Jr. |

## MEMORANDUM DECISION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Rite Aid Corporation and its related entities, (the "Debtors") filed petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 1, 2023 (the "Petition Date"), and confirmed a plan (the "Plan") on August 16, 2024. Case No. 23-18933 (the "Main Case") Dkt. No. 1. The Plan called for the formation of the RAD Sub-Trust A (the "Trust"), which would be a successor-in-interest to the Debtors' estates, and Thomas A. Pitta was appointed as trustee (the "Trustee"). Dkt. No. 1.[1] The Trustee has initiated these three adversary proceedings (the "Actions") against multiple former directors and officers of the Debtors (collectively, the "D & O's"), as well as McKinsey & Company, Inc., and its affiliates ("McKinsey"). See Adv. Nos. 25-1386 (the "Compensation Action"), 25-1387 (the "Consultant Action"), and 23-1388 (the "Opioid Action"). All three Actions bring multiple claims for breach of fiduciary duty against the D & O's (collectively, the "Claims").[2] Id. Each of the Actions include allegations that the D & O's breached the duty of either care, loyalty, oversight, or other duties owed to the Debtors by, among other things, approving or allowing compensation payments to insiders that violated applicable law and corporate policies, approving the payment of fees to the Consultants for services which they knew or should have known offered little or no value to the Debtors, or failing to ensure the Debtors complied with applicable law in the sale of opioids. See id.

The D & O's have filed motions to dismiss in all three cases (the "Motions"), arguing, among other things, that the Court lacks subject matter jurisdiction over the Claims against them.[3] Because subject matter jurisdiction is a gateway question, this Decision considers only whether it

---

[1] Unless otherwise noted, the facts discussed are alleged in each complaint.

[2] In addition to these Claims, the Consultant Action seeks to recover funds from McKinsey pursuant to sections 544, 547, 548 and 550 of the Bankruptcy Code.

[3] McKinsey filed a motion to dismiss the claims against it in the Consultant Action on other grounds. That motion will be the subject of a separate decision.

has jurisdiction to hear and decide the Claims. At the Court's request, both the Trustee and the D & O's submitted additional briefs related to subject matter jurisdiction in each Action, and a hearing (the "Hearing") was held on September 16, 2026. For the reasons discussed below, the Court finds it lacks subject matter jurisdiction over the Claims and the Motions will be granted.

## Jurisdiction

Venue is proper in this Court under 28 U.S.C. §§ 1408, 1409. There is a question as to this Court's jurisdiction over these actions, however this Court has jurisdiction to determine whether and to what extent it has jurisdiction over the Actions before it. United States v. Ruiz, 536 U.S. 622, 628 (2002).

## Background

The Compensation Action alleges that six of the former directors, three of whom were also members of the Debtors' compensation committee (the "Compensation Committee") breached their fiduciary duties to the Debtors by authorizing cash compensation to be paid out to insiders in the weeks leading up to the Petition Date in violation of corporate policies and applicable law, that payments were made for less than reasonably equivalent value, or were otherwise not beneficial and were not in the best interests of the Debtors and their creditors. Compensation Action, Dkt. No. 1. The defendants in this action include: Robert Knowling, Arun Nayur, Katherine Quinn (collectively with Knowling and Nayur, the "Compensation Committee Members"), Bruce Bodaken, Bari Harlam, and Louis Miramontes (collectively with the Bodaken, Harlam, and the Compensation Committee Members, the "Compensation Action Defendants"). The Compensation Action brings a second cause of action against the Compensation Committee Members for allegedly violating their fiduciary duties to the Debtors in exceeding their authority to adopt new or amended compensation packages and plans resulting in money being paid to insiders without any benefit inuring to the Debtors. Id.

The Consultant Action brings four causes of action (the "McKinsey Claims") seeking to recover allegedly fraudulent transfers and preference payments made to the McKinsey (the "McKinsey Transfers") pursuant to sections 544, 547, 548 and 550 of the Bankruptcy Code. Consultant Action, Dkt. No. 1. Because McKinsey does not raise lack of subject matter jurisdiction and the Court finds it has jurisdiction over the McKinsey Claims, these claims will not be discussed further in this Decision.[4] However, the Consultant Action brings two additional causes of action, the first is a claim for breach of the fiduciary duty of care (the "Negotiation Claim") against Heyward Donigan, the former CEO and president of the Debtors, alleging that she breached her duty of care by not taking the proper care in negotiating the contracts (the "McKinsey Contracts") with McKinsey. Id. The final cause of action also alleges a breach of the fiduciary duty of care for approving fees to McKinsey (the "Fees Claim") and is brought against eight officers including: Donigan, Elizabeth Burrr, Christopher Bohrer, Paul Gilbert, Andrew Persuad, Justin Mennen, Michael Savage and Thomas Warburton (collectively, the "Officer Defendants"). The claims in the Consultant Action allege that the Officer Defendants failed to exercise reasonable care in investigate the value of the McKinsey Contracts and approving fees to McKinsey that were made in exchange for little to no value, and further by presenting incomplete or misleading information to the board of directors. Id.

Finally, the Opioid Action brings a breach of fiduciary duty of loyalty claim under Delaware law against twelve board members and two officers, (the "Opioid Defendants") for their

---

[4] The Court has subject-matter jurisdiction over avoidance claims pursuant to 28 U.S.C. § 1334(b), and the Standing Order of Reference as claims that "arise under" the Bankruptcy Code. See In re: Cyber Litigation, Inc., 2026 WL 2333223, at *6 (Bankr. D. Del. Aug. 11, 2026). The fraudulent transfer claims "arise under" the Code since "the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code." Id.

alleged failure to ensure the Debtors complied with the law regarding the sale of opioids. Opioid Action, Dkt. No. 1.[5]

**Discussion**

The exclusive question this Decision considers is whether this Court has subject matter jurisdiction over the Claims in these Actions, and if so, which ones.

Judicial Code section 1334(b) grants original jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11 to the district court. 28 U.S.C. § 1334(b). That jurisdiction may then be referred, under section 157 of Title 28, to the bankruptcy judges of the district. Cyber Litigation, 2026 WL 2333223, at *5. The Standing Order of the United States District Court of New Jersey dated July 10, 1984, as amended September 18, 2012, and June 6, 2025, refers all bankruptcy cases to the bankruptcy court, bringing such proceedings within the court's jurisdiction under section 1334.

Therefore, bankruptcy jurisdiction extends to four types of proceedings: (1) cases "under" title 11, that is, the bankruptcy petition; (2) proceedings "arising under title 11"; (3) proceedings "arising in" a bankruptcy case; and (4) proceedings "related to" a bankruptcy case. In re Exide Techs., 544 F.3d 196, 205 (3d Cir. 2008) (citing 28 U.S.C. § 1334(b); In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2005)). The first three categories are "core" proceedings while the fourth category, "related to" proceedings, are "non-core" proceedings. Id. (citing Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999)). "Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." Halper, 164 F.3d at 837. "Related to" jurisdiction, is limited, and the Court is only granted jurisdiction over a non-core action, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon

[5] The Court refers to the complaints for the Opioid Action, the Compensation Action and the Consultant Action, as the "Complaints."

the handling and administration of the bankrupt estate." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis added).

However, regarding "related to" jurisdiction, "the scope of bankruptcy court jurisdiction diminishes with plan confirmation," although it does not disappear entirely. In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004). This is because, as noted above, "related to" jurisdiction hinges on whether the outcome of the case could have any conceivable effect on the bankruptcy estate. Pacor, 743 F.2d at 994. However, section 1141(b) of the Bankruptcy Code specifies once a plan is confirmed, all estate property revests in the debtor unless the plan provides otherwise. 11 U.S.C. § 1141(b). Therefore, "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." Resorts, 372 F.3d at 165 (citing In re Fairfield Cmtys, Inc., 142 F.3d 1093, 1095 (8th Cir. 1998)). However, the Third Circuit also found "that there is some related-to jurisdiction that survives post-confirmation." Cyber Litigation, 2026 WL 2333223, at *6 (citing Resorts, 372 F.3d 154). To begin, a court always has jurisdiction over any dispute that requires it to interpret or enforce the plan's confirmation order. Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) ("Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."). For example, in Travelers, the Supreme Court ruled that a bankruptcy court had jurisdiction to rule on post-confirmation dispute over asbestos related claims against a former debtor, after the bankruptcy court had dismissed the claims finding they were barred by the injunction order it had entered as part of the confirmation order. Id. at 151-54. However, the post-confirmation "related to" jurisdiction "appears to extend beyond claims that merely seek to enforce the plan and confirmation order. It covers claims that have a 'close nexus' to the plan." Cyber Litigation, 2026 WL 2333223, at *6. The Third Circuit adopted a test, requiring that for a dispute to fall within a

bankruptcy court's post-confirmation "related to" jurisdiction, the dispute must have a "close nexus" to the bankruptcy plan. Resorts, 372 F.3d at 166.

Although there is no established standard to determine whether a matter has a "close nexus" to the bankruptcy plan, caselaw offers guidelines to determine whether the matter is sufficiently related to justify the exercise of post-confirmation jurisdiction. Recently, Judge Goldblatt issued four decisions which summarized the prevailing caselaw on this question. See In re SunPower Corp., 2026 WL 1735661 (Bankr. D. Del. June 4, 2026) ("SunPower I"); In re: SunPower Corp., 2026 WL 2147348, at *1 (Bankr. D. Del. July 23, 2026) ("SunPower II"); Cyber Litigation, 2026 WL 2333223; and In re Simply Interior Homes, LLC, 2026 WL 2854820 (Bankr. D. Del. Sept. 22, 2026). In SunPower II, the court noted that generally, "neither the materiality of the claim [i.e. its connection to the cause of the bankruptcy filing or the amount of the potential recovery] nor a general retention of jurisdiction provision in a plan is, standing alone, a sufficient basis for exercising post-confirmation related-to jurisdiction." 2026 WL 2147348, at *12. Instead, both of these are factors which "bear on the propriety of a court retaining post-confirmation 'related to' jurisdiction," but neither on their own is sufficient. Id. at *14. The SunPower II court concluded, and this Court agrees, that in order for a court to exercise jurisdiction on a non-core claim brought post-confirmation, the plan must, at a minimum, contain a retention of jurisdiction provision which "specifically identifies the claim as one over which the bankruptcy court is retaining jurisdiction." Id.

In this case, the Confirmation Order contains the following provision retaining jurisdiction:

> Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, except as otherwise provided in the Plan, this Confirmation Order, or by applicable federal law, the Bankruptcy Court shall retain jurisdiction as set forth in Article XIII of the Plan.

Main Case, Dkt. No. 4532, CM/ECF p. 175, ¶ 275. Further, the Plan itself includes several provisions retaining jurisdiction over matters including to:

> resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any Assigned Claims and, to the extent authorized by law and the terms of the applicable Insurance Policies, any Assigned Insurance Rights.

Id. at CM/ECF p. 300. Both of these are general retention of jurisdiction clauses, neither of which satisfy the specificity required to show that any of the Claims have a "close nexus" to the Plan.

However, the Trustee argues that the Plan itself does specifically describe the Claims at issue here, and further that the Claims themselves are so material to the Plan, that it is appropriate for this Court to exercise subject matter jurisdiction.

A. Specificity

As noted, there are six separate claims brought in these Actions, none of the Claims name the same group of defendants, some claims name only former officers of the Debtors, other claims are brought against members of the Compensation Committee, and some are brought against a single former director or as many as twelve former directors. See Complaints. Each claim alleges breach of fiduciary duty, although some allege a breach of the duty of care, others allege a breach of the duty of loyalty, etc. Id.

The Trustee's briefs argue each claim in the Actions meet the requirements laid out in both the Resorts and SunPower cases, and this Court can exercise subject matter jurisdiction over the Claims because the Plan contains a provision specifically describing the Claims, and further because the Claims are material to the Plan. See Case No. 25-1386, Dkt. No. 55; Case No. 25-1387, Dkt. No. 57; Case No. 25-1388, Dkt. No. 49 (collectively, the "Briefs").[6] The Briefs point out that the Plan retains jurisdiction of the "Assigned Claims," and refers to two provisions in the Plan that, the Trustee argues, identify those claims with specificity:

> "Assigned Claims" means, collectively, all of the Debtors' claims and Causes of Action, including all of the Debtors' claims and Causes of Action against the Excluded Parties, except: (a)

[6] The Briefs are substantially similar and make the same arguments, and so the Court refers to them collectively.

preference actions waived or settled during the Chapter 11 Cases (provided that the Debtors will not waive or settle any preference claims against the Excluded Parties without the consent of the Committees), or as otherwise agreed by the Committees; (b) claims or Causes of Action against third parties, with respect to which the Reorganized Debtors have an ongoing trade or commercial relationship and with respect to which the Reorganized Debtors assume indemnification obligations under the Plan or otherwise through the Chapter 11 Cases (other than indemnification claims against potential joint tortfeasors and Co-Defendants); (c) claims or Causes of Action (including Avoidance Actions) against contractual counterparties, vendors, or other go-forward commercial counterparties with the Reorganized Debtors (other than indemnification claims against potential joint tortfeasors and Co-Defendants); (d) claims or Causes of Action (including Avoidance Actions) against the DIP Secured Parties, the Junior DIP Secured Parties, the Prepetition Secured Parties, the Senior Secured Noteholders, and in each case their respective Agents, Trustees, and other Related Parties; (e) any and all claims or Causes of Action against any Debtor Related Party; and (f) any and all claims or Causes of Action against MedImpact or any of its affiliates or subsidiaries arising postpetition in connection with the enforcement of the Elixir Sale Order (including the Elixir Purchase Agreement) and the acquisition by MedImpact of the Elixir Acquired Assets. Notwithstanding the foregoing, the Assigned Claims shall include all of the Debtors' claims and Causes of Action against or relating to McKinsey & Co., Inc. and its Related Parties and shall include all of the Debtors' claims and Causes of Action against or relating to MedImpact arising prior to the Petition Date, if any (other than in connection with negotiating and documenting the Elixir Purchase Agreement). For the avoidance of doubt, any Assigned Claims against any officer or director of Rite Aid Corporation or any of Rite Aid's directors or officers who are not Debtor Related Parties shall have recovery expressly limited to the proceeds of any Insurance Policy, except to the extent and only as necessary to trigger any insurance carrier's obligation to pay such liability and all such individuals shall have the full protections of any D&O Liability Insurance Policies. Notwithstanding anything to the contrary herein, all of the Debtors' claims and Causes of Action against the Excluded Parties, and all Scheduled Claims, shall be Assigned Claims. Notwithstanding anything to the contrary herein, Assigned Claims shall not include any claims or Causes of Action against McKesson, which, for the avoidance of doubt, is not an Excluded Party; *provided*, that, for the avoidance of doubt, Assigned Claims shall include the Debtors' Pass Through Rights, including any Pass

> Through Rights as provided in any agreement between Rite Aid and McKesson.

Plan, Art. I.A. § 42. As well as:

> "Cause of Action" or "Causes of Action" means any claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, including Indemnification Rights, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, cross claim, counterclaim, contribution, suit, class action, third-party claim, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, direct or indirect, choate or inchoate, Disputed or undisputed, liquidated or unliquidated, Secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, in tort, at law, in equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws"

Plan, Art. I.A. § 61. The Trustee alleges that this language is sufficient because it specifically references the breach of fiduciary duty claims at issue here. Further, the Trustee argues that the potential defendants are specifically identified because "Causes of Action" is limited to claims against "Excluded Parties," which the Plan defines as:

> (a) any potential joint tortfeasor with the Debtors, Co-Defendant to the Debtors, or named party in connection with any Tort Claims related to any of the Debtors' Products; (b) any of the Debtors' current or former third party agents, partners, representatives, professionals or consultants named in connection with any Tort Claims related to any of the Debtors' Products (excluding any Debtor Related Party); (c) any distributor, manufacturer, supplier,

> or other party engaged in the distribution, manufacture, supply, or dispensing/sale of the Debtors' Products named in connection with any Tort Claims related to any of the Debtors' Products; (d) any of the Debtors' current and former directors and officers other than any Debtor Related Party; (e)(i) the seller counterparties and subsequent transferees for [certain acquisitions]; (ii) such seller counterparties' Related Parties and subsequent transferees, . . . and (iii) the attorneys, financial advisors, investment bankers, agents, representatives, consultants, underwriters, and other professionals, . . . (f) the consultants who provided shareholder proxy advisory services in connection with the failed merger with Albertsons Companies, Inc., solely in their capacity as such; (g) . . . [several different companies] and (o) certain additional parties to be identified by the Committees, . . .. For the avoidance of doubt, no Debtor Related Party shall be an Excluded Party.

Plan, Art. I.A. at 16-17.[7] The Trustee repeatedly cites to these provisions arguing that they distinguish these Claims from those in SunPower II. See Briefs. Specifically, the Trustee argues that the "retention of jurisdiction provision, expressly retaining jurisdiction over 'Causes of Action' that may arise in connection with any Assigned Claims." Further, the Trustee argues that "Assigned Claims is defined in the Plan as the 'Causes of Action against the Excluded Parties;'" and finally, that the definition of "Causes of Action" includes claims "based on . . . breach of fiduciary duty." Id. Thus, the Trustee argues, these definitions together identify these specific Claims against these specific Defendants, meeting the SunPower II test. Id.

The SunPower II court stated that a retention of jurisdiction clause which is overly broad is not sufficient to satisfy the "close nexus" test because "it provides no evidence of a sufficiently close nexus with the bankruptcy proceeding to support post-confirmation jurisdiction." SunPower II, 2026 WL 2147348, at *12 (quoting In re BWI Liquidating Corp., 437 B.R. 160, 166 (Bankr. D. Del. 2010)). In SunPower II, the retention of jurisdiction clause applied to "[A]ll Causes of Action that a Debtor or an Estate may hold." Id.

---

[7] The paragraph numbers in the Plan restart at 1 on page 16, and so to avoid confusion the Court cites to the page numbers.

While the retention of jurisdiction clause here is not as expansive as that in SunPower II, it still fails to specifically identify any particular claim. While the Trustee is correct that the definition of "Causes of Action" under the Plan does include breach of fiduciary duty claims like the Claims here, it also includes: "any claim, controversy, demand, right, action, suit . . . cause of action, proceeding, [and further] include[s]: (a) all rights of setoff . . . and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim . . . in any manner arising from . . . tort, breach of contract, breach of fiduciary duty, violation of . . . law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence . . .. Plan, Art. I.A. § 61. So, while this language does specifically list breach of fiduciary duty as one potential type of claim that the Court could retain jurisdiction over, this provision is so broad that the Court struggles to think of a single cause of action that is not covered by this language. Ultimately, the Court finds little if any distinction between using the phrase "any and all causes of action a debtor may hold," and simply listing every possible cause of action the Debtors may hold. Neither one indicates that any particular cause of action is closely linked to the success of failure of the Plan, or has any close nexus with the Bankruptcy at all, and neither indicates that the parties considered these particular Claims as integral to the Plan itself.

A similar problem arises with the Trustee's argument that the Plan's language specifies "the very defendants in these cases." Briefs. The Trustee argues that the language of the Plan limits the "Causes of Action" to those against the "Excluded Parties," defined above, and further that the definition specifically includes "any of the Debtors' current and former directors and officers." However, this definition also includes: any potential joint tortfeasor; any of the Debtors' current or former third-party agents, or consultants named in connection with any Tort Claims; any party engaged in the distribution of the Debtors' Products; attorneys, or other advisors; etc. Plan, Art. I.A. p. 16-17. Compare this with Cyber Litigation, in which the plan's language specifically named

the defendant against whom the action was being brought. Cyber Litigation, 2026 WL 2333223, at *7. Because the defendant was just 1 of 76 potential defendants named in the plan, the court expressed some reservations about exercising jurisdiction over the matter, but ultimately decided that although "the question was a close one," listing the defendant by name in combination with other factors, was a sufficient basis to find a close nexus between the plan and the claim. Id. With limited exceptions not applicable here, the Plan fails to list any potential defendants by name, and the definition of Excluded Parties is extremely broad. In fact, even if the Court excludes all the other potential defendants and considers just the Debtors' current or former officers, it is left vast group of potential defendants, the Court is not even certain how many former officers of the Debtors there are. Further, each Claim in these Actions is brought against a different subset of former directors or officers, indicating that the language in the Plan is not intended to retain jurisdiction over any particular claim against any particular defendant, but rather all potential claims against several large groups of potential defendants. The purpose of requiring specificity is to ensure that there is a close nexus between the confirmed plan and the cause of action in question, such that it would justify a bankruptcy court exercising jurisdiction over the claim. See generally, SunPower II, 2026 WL 2147348, at *6. Because the Court's "related to" jurisdiction is limited to matters which effect the estate, and there is no estate post-confirmation, a party must demonstrate that a claim is integral to the Plan, and that the court chose to retain jurisdiction over this particular claim in the confirmation order because of its significance to the success of the Plan, in order to justify exercising subject matter jurisdiction over that claim.

The language in the Plan lists these particular types of claims, but also includes so many other types of claims as to exclude almost none, and similarly includes a vast array of potential defendants, without either naming any potential defendant, or clarifying which, if any, claims might be brought against which, if any, of the potential defendants. The Court finds no more

specificity in the language of this Plan than in the SunPower cases, which attempted to retain jurisdiction over "any and all claims." Therefore, the Court finds that the language in the Plan does not "specifically identif[y] the claim as one over which the bankruptcy court is retaining jurisdiction." SunPower II, 2026 WL 2147348, at *14.

The failure to include language which specifically identified the claims over which the court was to retain jurisdiction would typically end the inquiry, as the "Resorts opinion seems to exclude the possibility that the materiality of the claim is, by itself, a basis for the post-confirmation exercise of related-to jurisdiction." Id. at 12. However, the Court will also consider the Trustee's argument that the Claims are so material to the Plan as to justify the exercise of subject matter jurisdiction.

B. Materiality

Materiality "either to causing the bankruptcy filing or to creditor recoveries," cannot typically be a sufficient basis by itself to give rise to related-to jurisdiction. SunPower II, 2026 WL 2147348, at *12. Caselaw is clear that a claim's potential to enlarge the res of the estate is not sufficient to justify a bankruptcy court's exercise of jurisdiction over the claim post confirmation. SunPower II, 2026 WL 2147348, at *12; BWI, 437 B.R. at 165. However, some courts have considered a claim's materiality as a factor in determining whether there is a close nexus between the claim and the confirmed plan and a court's ability to exercise "related to" jurisdiction over a claim. See Cyber Litigation, 2026 WL 2333223, at *8, 12.

The Trustee argues that these "[C]laims are highly material – indeed, integral – to the implementation of the Plan." Briefs. The Briefs argue that these Actions are similar to those presented in Cyber Litigation, and therefore are sufficiently material to the Plan to warrant the Court's exercise of jurisdiction over them. The Trustee makes several arguments as to why the Claims are so integral, including that: the potential recovery is important to the successful

implementation of the Plan; the claims are linked to the Debtor's pre-petition losses; and that there are other documents that highlight the importance of the Claims, including: the Disclosure Statement, Main Case, Dkt. No. 4532, Ex. B; the Third-Party Release Opt-In Notice and Related Opt-In Form, Dkt. No. 4532, Ex. D; the Litigation Trust Agreement, Dkt. No. 4793, Ex. I-2; the Litigation Trust Cooperation Agreement, Dkt. No. 4793, Ex. O; and the UCC/TCC Allocation Agreement, Dkt. No. 3891, Ex. (collectively the "Plan Documents"). Briefs.

However, the facts of this case are distinguishable from those in Cyber Litigation. In Cyber Litigation, the debtor's business was essentially a ponzi scheme orchestrated by the defendant, the debtor's former CEO, who held exclusive access to "the data and metrics underlying the debtor's" sale and customer counts, and used this exclusive access falsify the debtor's financial reports. Cyber Litigation, 2026 WL 2333223, at *3. The Cyber Litigation court ultimately concluded, despite expressing a "measure of unease," that the fact that defendant's actions were "the central driver of the bankruptcy filing, and because these claims are among the [trust's] most important tools [to compensate creditors]," along with the language of the plan, that it could exercise jurisdiction over the claims. Id. at *7-8.

While the Court is not certain that a claim's materiality can ever, by itself, be a sufficient basis to create a close nexus sufficient to exercise jurisdiction over an action post-confirmation, it is sufficient to say that the facts of this case do not establish the required close nexus. To begin, the defendant in Cyber Litigation had essentially created a ponzi scheme, in which he alone had access to the debtor's financials, and was able to defraud creditors making the defendant, if not the sole cause, then certainly "the root cause" and the "central driver of the bankruptcy filing". Id. at 8 (emphasis original). Here, there is no allegation that any of the twenty-three defendants across these Actions held exclusive access to the Debtors' financials, nor that the conduct alleged is the root cause of the bankruptcy. Indeed, the basis of the Compensation Action is that the

Compensation Action Defendants knew that bankruptcy was inevitable, and paid the bonuses out to avoid having those funds captured by the estate. As a result, this can't be viewed as the cause of the bankruptcy, but instead actions taken in anticipation of the bankruptcy. Therefore, that conduct cannot be said to be cause of the Bankruptcy. See Compensation Action, Dkt. No. 1. Similarly, none of the Claims in these Actions can be seen to be the root cause of the Bankruptcy, which instead appears to have been caused by a myriad of factors. Assuming the truth of the allegations in the Actions, the conduct of the D & Os may have syphoned assets from the Debtors, but cannot be read to have been the root cause or central driver of the Debtors' bankruptcies.

Moreover, even assuming that the potential recovery from a claim could be material enough to a plan to justify the exercise of post-confirmation jurisdiction over the claim, the Court finds that a plaintiff would have to establish that the recovery was a very significant portion, if not virtually all, of the total recovery the plan can offer. The Trustee cannot reasonably make this argument in these cases. First, there are three separate Actions and six different Claims pending, and so it is unlikely that the Trustee could establish that any one of those Actions or Claims is such a significant portion of the creditors' potential recovery to justify the exercise of jurisdiction over the claim. Further, the McKinsey Action alone, which is not the subject of this decision, seeks a recovery of $136 million, thus offering a significant potential recovery beyond what is sought in the Actions here. Finally, almost 1,000 other adversaries have been filed in these cases and it appears the majority, if not all, seek recoveries to fund the Trust. Therefore, while the Court does not decide if the materiality of a potential recovery by itself could ever justify the exercise of jurisdiction over a claim, none of these Actions meet that threshold.

Finally, the Trustee argues that the Plan Documents support finding that that the Claims at issue here have a close nexus to the bankruptcy. See Briefs. The Trustee argues that the Claims are "specifically delineated within the Plan documents;" and that they establish that the Claims are

"necessary . . . to effectuate" the Plan and so are material to the Bankruptcy. Id. Indeed, the Trustee attached thirty-five pages of quotes from the Plan and the Plan Documents in support of this argument.

However, this argument is unavailing for several reasons. First, the Court, having reviewed all of references cited by the Trustee in the Plan, Confirmation Order, and Plan Documents, finds that the most relevant references to these Claims are quoted above, and for the reasons discussed do not establish a close nexus required for this Court to find that it holds "related to" jurisdiction over them.[8] Further, as noted by the D & Os at the Hearing, the Plan Documents, in particular the "cooperation agreement," was not completed at the time the Plan was confirmed. Hrg. at 1:34; see also, Dkt. No. 5587 at 2 (stating the cooperation agreement was entered into two weeks after the Confirmation Order). As such, even assuming the Plan Documents did reference the Actions, those references cannot have been part of the Confirmation Order or Plan.

## Conclusion

The Plan here did not specifically identify the Claims at issue in these Actions as matters over which the Court would retain post-confirmation jurisdiction. This is not to imply that the Claims cannot be brought by the Trust, but simply that the Trustee must bring the Claims in a court of competent jurisdiction. Although the language in the Plan is explicit in listing breach of fiduciary claims, it lists such a broad range of potential claims as to essentially function as a blanket retention of jurisdiction over all potential claims. Further, as relevant to this Decision, the Plan fails to identify a single defendant by name, instead describing a pool of potential defendants far too large to satisfy the specificity requirements laid out in Resorts and SunPower II. Finally, while the Court makes no ruling as to whether a claim's materiality, by itself, can ever be sufficient to

[8] The fact that the Trustee attached thirty-five pages of text does not indicate specificity, but instead indicates that there is no particular language that establishes the required specificity or materiality for these Claims to fall under this Court's jurisdiction.

warrant the Court's exercise of post-confirmation "related to" jurisdiction, the Claims in these Actions are do not warrant such action. Therefore, the Motions will be granted without prejudice to the Trustee bringing the Claims before a court of competent jurisdiction.

Dated: October 5, 2026

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE